10-409-cv (L)
Millea v. Metro-North R.R. Co.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: February 7, 2011    Decided: August 8, 2011)

Docket Nos. 10-409-cv (L); 10-564-cv (XAP)

- - - - - - - - - - - - - - - - - - - -x

**CHRISTOPHER MILLEA,**

>  ***Plaintiff-Appellant-Cross-Appellee,***

> **-v.-**                                              **10-409-cv (L)**
>                                                       **10-564-cv (XAP)**

**METRO-NORTH RAILROAD COMPANY,**

>  ***Defendant-Appellee-Cross-Appellant.***

- - - - - - - - - - - - - - - - - - - -x

Before:          DENNIS JACOBS, <u>Chief Judge</u>,
                 PETER W. HALL, <u>Circuit Judge</u>,
                 SHIRA A. SCHEINDLIN, <u>District Judge</u>.[*]

Following a jury trial in the United States District Court for the District of Connecticut (Bryant, J.),

---

[*] The Honorable Shira A. Scheindlin, of the United States District Court for the Southern District of New York, sitting by designation.

plaintiff Christopher Millea won partial victory on his claims under the Family Medical Leave Act ("FMLA"). He and the defendant, Metro-North Railroad Co. ("Metro-North"), cross-appeal. Millea argues that, on his retaliation claim, the jury charge should have adopted the standard set forth for Title VII retaliation in <u>Burlington Northern & Sante Fe Railway Co. v. White</u>, 548 U.S. 53 (2006). Millea also appeals the award of only $204 in attorneys' fees on his one successful claim, that Metro-North interfered in his exercise of FMLA rights. Metro-North cross-appeals the denial of its Rule 50 motion for judgment as a matter of law on the interference claim. We affirm the district court's denial of Metro-North's motion. Because the district court erred in rejecting the <u>Burlington Northern</u> jury charge, and this error prejudiced the plaintiff, we vacate and remand for a new trial on the retaliation claim. We also vacate the award of attorneys' fees and remand for recalculation in conformity with the lodestar method.

<u>FOR APPELLANT</u>:  Joseph D. Garrison, Jr.
        Garrison, Levin-Epstein, Chimes,
        Richardson & Fitzgerald, P.C.
        New Haven, CT

        Charles C. Goetsch
        Cahill Goetsch & Perry, P.C.
        New Haven, CT

FOR APPELLEE:        Charles A. Deluca
                     Beck S. Fineman
                     William N. Wright
                     Ryan Ryan Deluca LLP
                     Stamford, CT

DENNIS JACOBS, Chief Judge:

Following a jury trial in the United States District Court for the District of Connecticut (Bryant, J.), plaintiff Christopher Millea won partial victory on his claims under the Family Medical Leave Act ("FMLA").  He and the defendant, Metro-North Railroad Co. ("Metro-North"), cross-appeal.  Millea argues that, on his unsuccessful retaliation claim, the jury charge should have adopted the standard set forth for Title VII retaliation in Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53 (2006).  Millea also appeals the award of only $204 in attorneys' fees on his one successful claim, that Metro-North interfered in his exercise of FMLA rights.  Metro-North cross-appeals the denial of its Rule 50 motion for judgment as a matter of law on the interference claim.  We affirm the district court's denial of Metro-North's motion.  Because the district court erred in rejecting the Burlington Northern jury charge, and this error prejudiced the plaintiff, we vacate and remand for a new trial on the

3

retaliation claim.  We also vacate the award of attorneys' fees and remand for recalculation in conformity with the lodestar method.

## BACKGROUND

Christopher Millea suffers from severe post-traumatic stress disorder as a result of combat as a Marine during the First Gulf War.  Notwithstanding psychotherapy and medication, he suffers unpredictable panic attacks and exhaustion that can require time off work on short notice. In 2001, Millea began working for Metro-North, a tri-state area commuter railroad.  In 2005, he applied for special leave under the FMLA; Metro-North approved his application and granted him 60 days of intermittent FMLA leave for 2006.

*The Incident.*  In the summer of 2006, Millea was working in a Stamford storeroom under supervisor Earl Vaughn, with whom Millea had developed a contentious relationship.  A phone conversation with Vaughn on September 18, 2006, developed into a heated disagreement that triggered one of Millea's panic attacks.  Millea immediately left work to see his doctor.  Because the encounter with Vaughn led to the attack, Millea did not

4

inform Vaughn about his unforeseen FMLA leave; instead, he advised Garrett Sullivan, the Lead Clerk, and asked Sullivan to advise Vaughn, which Sullivan did. The next day, Millea called Sullivan at 5:45am to report that he was taking another FMLA day; Sullivan again relayed the information to Vaughn. In both instances, Vaughn received timely, although indirect, notice of Millea's use of FMLA leave.

Metro-North's internal leave policy provides, in relevant part, "[i]f the need for FMLA leave is not foreseeable, employees must give notice to their supervisor as soon as possible." Because Millea did not notify Vaughn of his two absences *directly*, Vaughn told Metro-North's payroll department to log Millea's absences as non-FMLA leave. Metro-North then opened an official investigation of Millea, which resulted in a formal Notice of Discipline being placed in his employment file for one year. The Notice was expunged after a year, Millea having had no further disciplinary incidents. After the investigation, Millea voluntarily transferred to a custodian janitorial job, which paid slightly less but was not supervised by Vaughn.

*The Complaint.* Millea's complaint against Metro-North alleges that he never violated Metro-North's internal leave policy because he notified Vaughn (indirectly) of his absences, or, in the alternative, that the aspect of Metro-North's policy he violated was void because it conflicted with the regulations implementing the FMLA. Millea alleges three claims:

1. Interference with Millea's ability to take FMLA leave. See 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.").

2. Retaliation against Millea for taking FMLA leave by: (i) placing a notice of discipline in his employment file for a year; (ii) requiring him to update his FMLA certification; (iii) creating a work environment that motivated him to transfer to a lower paying job; (iv) delaying approval of his bid for the lead custodian position in 2009; and (v) subjecting him to heightened managerial surveillance. See 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.").

3. Intentional infliction of emotional distress ("IIED").

*The Answer.* On the interference claim, Metro-North answered that it was entitled to log Millea's absences as non-FMLA leave because he violated Metro-North's legally valid internal leave policy. On the retaliation claim,

Metro-North answered that none of the claimed acts of retaliation was the result of Millea's use of FMLA leave, and none was materially adverse. On the IIED claim, Metro-North answered that any violation of the FMLA was not done intentionally or outrageously and so could not amount to IIED.

*The Trial.* Millea's suit against Metro-North was tried in May 2009. Millea requested that the court charge the jury on the definition of "materially adverse employment action" using the standard articulated by the Supreme Court in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) ("Burlington Northern"), a Title VII retaliation claim case. The court rejected the proposed charge on the ground that this case involved the FMLA, not Title VII, and instead issued an instruction with a narrower definition of "materially adverse."

The jury returned a verdict in favor of Millea on his interference claim, awarding him $612.50 in lost wages and other damages. The jury found in favor of Metro-North on both the retaliation and IIED claims. Millea moved for costs and attorneys' fees, and the court awarded $204 in attorneys' fees and $18,643 in costs. Metro-North moved for judgment as a matter of law on the interference claim

7

and for its costs associated with the retaliation and EEID claims.  The court denied these motions.

Both parties now appeal.

**DISCUSSION**

This appeal and cross-appeal together present three questions.  First, did the district court err in denying Metro-North's request for judgment as a matter of law on Millea's interference claim?  Second, did the district court commit nonharmless error when it rejected Millea's proposed retaliation instruction based on the Burlington Northern standard?  Third, did the district court abuse its discretion in awarding Millea only $204 in attorneys' fees for his successful interference claim?

**I**

"We review a district court's ruling on a Rule 50 motion de novo, and apply the same standard used by the district court below."  Cobb v. Pozzi, 363 F.3d 89, 101 (2d Cir. 2004).  Judgment as a matter of law is available only if there is no "legally sufficient evidentiary basis" for a reasonable jury to find for the prevailing party on that claim.  Fed. R. Civ. P. 50(a)(1).  Judgment as a matter of

8

law is only granted when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994) (brackets and internal quotation marks omitted).

**A**

Metro-North argues there is no legal basis on which the jury could have concluded that Metro-North interfered with Millea's exercise of his FMLA rights.  Metro-North concedes that Millea was entitled to take FMLA leave and that it disciplined Millea for his use of such leave, but argues that such discipline was justified as a matter of law by Millea's failure to comply with Metro-North's internal leave policy requiring an employee to notify his supervisor *directly* when FMLA leave is taken.  There is no dispute that a company may discipline an employee for violating its internal leave policy as long as that policy is consistent with the law; however, we conclude that, on

9

these facts, Metro-North's internal leave policy is inconsistent with the FMLA.

The FMLA generally requires employees to "comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.303(c). However, this requirement is relaxed in "unusual circumstances" or where the company policy conflicts with the law. Id.

The regulations implementing the FMLA provide that when an employee's need for FMLA leave is unforeseeable (as Millea's was), "[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally." Id. § 825.303(a). Because this regulation expressly condones indirect notification when the employee is unable to notify directly, Metro-North's policy conflicts with the FMLA and is therefore invalid to the extent it requires direct notification even when the FMLA leave is unforeseen and direct notification is not an option.

Whether Millea's situation on September 2006 constituted an "unusual circumstance" in which he was "unable" to personally notify Vaughn is a question of fact,

10

not of law.  The jury found that Millea gave proper notice,

meaning his notice complied with the FMLA and all legally

valid aspects of Metro-North's internal leave policy.

Neither the district court nor this Court may second-guess

this finding.

**B**

Metro-North also argues that the jury verdict on the

interference claim must be vacated because the district

court committed legal error by charging the jury that an

employer's internal leave policy may not be more strict

than the requirements of the FMLA.  Metro-North argues this

instruction was impermissibly broad and vague.  We

disagree.

The district court charged the jury:

> In determining whether [Millea's] notice occurred
> as soon as practicable, you must consider all of
> the facts and circumstances of the situation.  You
> should note that under the FMLA, notice may be
> given by the employee, by a family member, or
> other responsible adult, such as a treating
> physician or other medical professional.  You
> should also note that an employer may impose
> customary rules and procedures for notification,
> provided that they are not more stringent than the
> requirements under the Family Medical Leave Act.

This instruction is not misleading:  It correctly explains

that the FMLA authorizes indirect notification and that an

11

employer is free to implement internal notification rules only to the extent those rules are not more strict than the law allows.

Metro-North argues that the "not more stringent" language is overly broad because companies may implement internal leave policies more strict than the FMLA as long as the "timing requirement" is not more strict than the FMLA permits.  This is incorrect:  The FMLA limits stringency, requiring certain latitude in terms of timing, method of notification, etc.  If the law expressly states that an employee may do a thing, a company's internal leave policy may not prohibit it.  In this case, the FMLA's implementing regulations state that an employee in Millea's position may notify his employer indirectly of his need for unforeseen medical leave; a company's internal leave policy may not require otherwise.  The jury instruction correctly captured this idea.

C

Even if Millea prevails on his interference claim, he would be entitled to no damages unless he suffered a compensable loss as a result of the alleged interference. The FMLA provides that an employer interfering with its

12

employee's legitimate use of FMLA-protected leave "shall be liable to [the] employee affected...for damages equal to...the amount of...any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation."  29 U.S.C. § 2617(a)(1)(A)(i)(I).  Metro-North argues that when it logged Millea's medical leave as "sick leave" instead of "FMLA leave," Millea suffered no compensable loss because both types of leave were unpaid, and that it is therefore entitled to judgment as a matter of law that it owes Millea nothing.

It appears from the record that Metro-North never made this argument before the district court.  Its opposition to Millea's motion for attorneys' fees implicitly conceded the validity of the $612.50 damages award:  It used this award as the basis for its calculation of attorneys' fees.  Arguments raised for the first time on appeal are deemed waived.  Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 221 (2d Cir. 2006) ("[T]his court ordinarily will not hear arguments not made to the district court.").  Having tacitly accepted the validity of the damage award before

13

the district court, Metro-North waived this argument even if it had merit, which is doubtful.[2]

## II

Millea challenges the judgment dismissing his retaliation claim on the ground that the jury instruction defining "materially adverse action" constituted reversible error.  We review <u>de novo</u> a claim of an erroneous jury instruction.  <u>Gordon v. N.Y.C. Bd. of Educ.</u>, 232 F.3d 111, 115 (2d Cir. 2000).  To justify a new trial, a jury instruction must be both erroneous and prejudicial.  <u>Id.</u> at 116.  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  <u>Id.</u>  An erroneous

---

[2] Section 2617(a)(1)(A) allows recovery for lost "benefits" and "other compensation" in addition to lost wages.  Logging Millea's FMLA leave as "sick leave" presumably reduced the number of remaining sick leave days to which Millea was entitled--"presumably," because it is assumed that Metro-North does not grant limitless unpaid sick leave (the record was never developed on this point precisely because Metro-North failed to raise the issue before the district court).  Furthermore, the controversy created by Vaughn's decision to change Millea's leave from "FMLA leave" to "sick leave" forced Millea to spend considerable time on the internal investigations and disciplinary proceeding, which may have resulted in missed work hours and lost wages.

14

jury instruction is prejudicial unless "the court is convinced that the error did not influence the jury's verdict."  Id.

**A**

Millea sought a charge using the definition of "materially adverse employment action" articulated by the Supreme Court in the Title VII lawsuit, Burlington Northern & Santa Fe Railroad Co. v. White, 548 U.S. 53 (2006).  In particular, Millea proposed that an adverse employment action occurs when "a reasonable employee in the plaintiff's position would have found the alleged retaliatory action materially adverse," and that a retaliatory action is "materially adverse" when the action "would have been likely to dissuade or deter a reasonable worker in the plaintiff's position from exercising his legal rights."

The district court rejected Millea's proposed instruction, instead charging the jury:

> An "adverse employment action" is a materially
> adverse change in the terms and conditions of
> employment.  Examples of material adverse change
> in the terms and conditions of employment are
> termination, demotion, loss of benefits, or
> significantly diminished responsibilities.  An
> alteration of job responsibilities and a mere

15

inconvenience are not examples of materially adverse changes in the terms and conditions of employment.

Millea argues that in light of the reasoning in Burlington Northern, the district court's definition of "materially adverse" was impermissibly narrow and therefore erroneous. We agree.

Burlington Northern expanded the definition of "materially adverse employment action" for purposes of Title VII retaliation claims. Now, a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (internal quotation marks omitted). The Court rejected the proposition that an actionable act of retaliation must relate to the specific terms and conditions of the employee's employment, id. at 61, and construed "materially adverse action" broadly to include changes in employment life outside of the terms and conditions of employment. Id. The Court concluded that only this broader definition fulfilled the purpose of Title VII's anti-retaliation provision: preventing employers

16

from deterring their employees from exercising their legitimate legal rights.  Id. at 68.

This rationale applies with comparable force to the anti-retaliation provision of the FMLA.  The FMLA's anti-retaliation provision has the same underlying purpose as Title VII--and almost identical wording.  Compare 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to...discriminate against any individual for opposing any practice made unlawful by this subchapter."), with 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter.").

We therefore join our sister circuits that have considered this issue and apply the Burlington Northern standard for materially adverse action to the FMLA context. See Breneisen v. Motorola, Inc., 512 F.3d 972, 979 (7th Cir. 2008) (applying Burlington Northern anti-retaliation standard to FMLA retaliation claims); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006) (same); McArdle v. Dell Prods., L.P., 293 F. App'x 331, 337 (5th Cir. 2008) (unpublished opinion) (per curiam) (same); DiCampli v. Korman Cmtys., 257 F. App'x 497, 500-01

17

(3d Cir. 2007) (unpublished opinion) (same); <u>Csicsmann v. Sallada</u>, 211 F. App'x 163, 167-68 (4th Cir. 2006) (unpublished opinion) (per curiam) (same).  For purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights.

By instructing the jury that a "material adverse action" is restricted solely to changes in the employee's terms and conditions of employment, the district court committed legal error.

**B**

Millea further argues that the erroneous jury instruction prejudiced him, and that retrial is required on his retaliation claim.  We agree.

Of the five retaliatory acts alleged by Millea, the jury found only one causally related to Millea's use of FMLA leave:  the placement of a formal letter of reprimand in Millea's employment file.  The error in the district court's jury instruction is harmless as to the four other actions due to lack of causation, and we affirm the judgment in favor of Metro-North as to those four actions.

18

As for the letter of reprimand, Metro-North argues that any error by the district court was harmless because the adverse effect of the letter was not "material" even under the Burlington Northern standard.  We disagree.

The Burlington Northern materiality standard is intended to "separate significant from trivial harms" so that employee protection statutes such as Title VII and the FMLA do not come to create "a general civility code for the American workplace."  Burlington Northern, 548 U.S. at 68 (internal quotation marks omitted).  To separate the significant from the trivial, the Burlington Northern standard employs an "objective" test, which considers whether the action would deter a "reasonable employee" from exercising his rights.  Id.  "[P]etty slights, minor annoyances, and simple lack of good manners will not" give rise to actionable retaliation claims.  Id.  In this objective light, we think (and conclude that a reasonable jury could decide) that a letter of reprimand would deter a reasonable employee from exercising his FMLA rights.  A formal reprimand issued by an employer is not a "petty slight," "minor annoyance," or "trivial" punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the

19

employee to believe (correctly or not) that his job is in jeopardy. A reasonable jury could conclude as much even when, as here, the letter does not directly or immediately result in any loss of wages or benefits, and does not remain in the employment file permanently.

Because the erroneous jury instruction differs materially from the proper jury instruction that Millea proposed, and because a reasonable jury could conclude that the letter of reprimand constitutes retaliation under the proper jury instruction, we conclude that the error was prejudicial.

Metro-North argues that any error was harmless in any event because Millea suffered no lost wages, salary, or employment benefits as a result of the alleged retaliation, and that no retrial is needed because Millea would receive no relief even if he prevailed. We disagree.

First, because Millea did not prevail on his retaliation claim, the jury made no factual findings as to whether Millea suffered any lost wages or benefits as a result of Metro-North's alleged retaliation. Under § 2617(a)(1)(A), Millea is entitled to recover not just lost wages and benefits but also any "actual monetary losses sustained" as a direct result of Metro-North's

20

retaliation. Millea has asserted that he sustained such losses: As a result of Metro-North's actions, he felt compelled to transfer to a lower paying job, thereby losing income. Millea should have an opportunity before the trial court to show that the letter of reprimand--if the jury determines that it constituted retaliation--caused this loss (and others).

Second, even if Millea cannot show specific monetary losses caused by the letter of reprimand, he may be entitled to equitable relief under § 2617(a)(1)(B), including any promotions or job transfers he may have been denied. Again, if Millea convinces a jury that the letter of reprimand constituted illegal retaliation, he deserves an opportunity to pursue such equitable relief.

Finally, the success of Millea's retaliation claim affects the attorneys' fees to which Millea is entitled under the FMLA's fee-shifting provision. After the trial, the district court reduced the attorneys' fees significantly because Millea prevailed only on the least significant of his three claims. Millea v. Metro-North R.R. Co., No. 3:06-cv-1929, 2010 WL 126186, at *4-8 (D. Conn. Jan. 8, 2010). This would change if Millea succeeded on his retaliation claim at retrial.

In sum, we hold that the definition of "materially adverse employment action" articulated by the Supreme Court in Burlington Northern applies to FMLA retaliation claims. The district court's failure to instruct the jury using this standard was an error that may have influenced the verdict, so it is not harmless and necessitates a new trial. We therefore vacate the judgment in favor of Metro-North on Millea's FMLA retaliation claim and remand for a new trial on this claim alone. We affirm the judgment in favor of Millea on his FMLA interference claim and the judgment in favor of Metro-North on Millea's IIED claim.

**III**

The FMLA directs that the district court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).

We review attorneys' fee awards for abuse of discretion. McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 416 (2d Cir. 2010). A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on

22

a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, "cannot be located within the range of permissible decisions." Id. (internal quotation marks omitted).

Millea argues the district court abused its discretion by calculating the fee award as a proportion of his monetary recovery. We agree, and we therefore vacate the fee award and remand for recalculation in accordance with the lodestar method and this opinion.[3]

**A**

"The district court retains discretion to determine...what constitutes a reasonable fee." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998) (internal quotation marks omitted). However, this discretion is not unfettered, and when a prevailing party

---

[3] Because we vacated the judgment in favor of Metro-North on Millea's retaliation claim, Millea could succeed on this claim at retrial, necessitating a recalculation of his attorneys' fees. Such a recalculation would render the errors made by the district court in its original calculation moot. However, we still must reach the fee award issue here because the legal error in the district court's original calculation necessitates a recalculation even if Millea's retaliation claim fails when retried.

is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by this Court and the Supreme Court.

Both this Court and the Supreme Court have held that the lodestar--the product of a reasonable hourly rate and the reasonable number of hours required by the case--creates a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); see also Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010). While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error. A detailed explanation of the lodestar calculation is unnecessary, but compliance with the Supreme Court's directive that fee award calculations be "objective and reviewable," implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure. Perdue, 130 S. Ct. at 1674.

It is unclear whether the district court calculated the lodestar. The opinion references Millea's request for $144,792 in attorneys' fees, but does not explain how this figure was calculated. Millea, 2010 WL 126186, at *6.

24

**B**

While a district court must calculate the lodestar, it is not "conclusive in all circumstances." Perdue, 130 S. Ct. at 1673. A district court may adjust the lodestar when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. However, such adjustments are appropriate only in "rare circumstances," because the "lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Id. (internal quotation marks omitted). For example, a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors. Instead, the lodestar can be adjusted only by factors relevant to the determination of reasonable attorneys' fees that were not already considered in the initial lodestar calculation. The district court erred by adjusting the initial $144,792 figure--which is presumably the lodestar--by several factors.

First, the district court reduced its initial figure because it concluded Millea's case was not particularly

complicated and "did not involve any novel legal issues significant to the legal community." Millea, 2010 WL 126186, at *5. "[T]he novelty and complexity of a case generally may not be used as a ground for [adjusting the lodestar]" because they are already included in the lodestar calculation itself, being "fully reflected in the number of billable hours recorded by counsel." Perdue, 130 S. Ct. at 1673 (internal quotation marks and bracket omitted). Thus, while a district court may not adjust the lodestar based on these factors, it may use them to determine the reasonable number of hours the case requires. That is a permissible consideration and one that a trial judge is particularly well-situated to evaluate.

Second, the district court impermissibly reduced its initial figure because it concluded that the interference claim--the only claim on which Millea prevailed--had no pubic policy significance. Millea, 2010 WL 126186, at *6. By enacting a fee-shifting provision for FMLA claims, Congress has already made the policy determination that FMLA claims serve an important public purpose

disproportionate to their cash value.  We cannot second-guess this legislative policy decision.[4]

Third, the district court impermissibly reduced its initial award because Millea was unsuccessful on his retaliation and IIED claims.  <u>Millea</u>, 2010 WL 126186, at *5-6.  Millea's lack of success on the IIED claim provides no reason to adjust the lodestar because the lodestar should have already excluded this claim.  When calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting.  Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be excluded to reflect the default rule that "each party must pay its own attorney's fees and expenses."[5]  <u>Perdue</u>, 130 S.

_____

[4] To the extent we have held otherwise in the past, <u>see</u> <u>Carroll v. Blinken</u>, 105 F.3d 79, 81 (2d Cir. 1997) ("[W]here the damage award is nominal or modest, the injunctive relief has no systemic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified."), such holdings were (at least) impaired by the declaration in <u>Perdue</u> that the lodestar is the "guiding light of our fee-shifting jurisprudence," that it is "presumptively reasonable," that it includes "most, if not all, of the relevant factors" in determining a reasonable fee award, and that it should only be deviated from in "rare" and "exceptional" circumstances.  <u>Perdue</u>, 130 S. Ct. at 1672-73 (internal quotation marks omitted).

[5] Hours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the

Ct. at 1671. Excluding these ineligible claims prevents abuse: Plaintiffs should not be able to inject frivolous or borderline frivolous fee-shifting claims into a litigation in order to collect attorneys' fees on claims for which fee-shifting is not available. For similar reasons, Millea's lack of success on his retaliation claim also provided no basis for adjusting the lodestar. The FMLA's fee-shifting provision only applies to claims on which the plaintiff prevails. See 29 U.S.C. § 2617(a)(3). Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar.

Finally, the district court impermissibly reduced its initial fee award based on an incorrect conclusion that Millea's victory was "de minimis." Millea, 2010 WL 126186, at *6. The $612.50 award was not de minimis; to the contrary, the award was more than 100% of the damages Millea sought on that claim. It was not a derisory or contemptuous rejection by the jury. The district court

---

lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint.

28

conflated a small damages award with a de minimis victory. True, where the plaintiff manages to prevail on a technicality in a mostly frivolous lawsuit, a court should award no attorneys' fees to discourage such lawsuits. Farrar v. Hobby, 506 U.S. 103, 114-15 (1992). However, "[t]hat is not to say that *all* nominal damages awards are *de minimis*. Nominal relief does not necessarily a nominal victory make." Farrar, 506 U.S. at 120-21 (O'Connor, J., concurring). FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis. If an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute. Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance. Perdue, 130 S. Ct. at 1673-74. And "the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate" used to calculate the lodestar

29

initially. <u>Id.</u> at 1673 (brackets and internal quotation markets omitted). Even in those "rare" and "exceptional" instances where an adjustment is warranted by the characteristics of the attorney, "the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." <u>Id.</u> at 1674. In other words, such adjustments should be made when calculating the original lodestar figure. The court must also link such adjustments to specific actions of the attorney that indicate a level of performance not accounted for in the prevailing market rate. <u>Id.</u> The district court erred by adjusting the attorneys' fee award based on the outcome of the litigation without tying that outcome to the quality of Millea's attorneys and without making the adjustment within the lodestar calculation.

C

The district court calculated its final fee award as a proportion of the damages Millea was awarded. <u>Millea</u>, 2010 WL 126186, at *6. This was legal error. While a court may, in exceptional circumstances, adjust the lodestar, <u>Perdue</u>, 130 S. Ct. at 1673, it may not disregard it

entirely. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.

## CONCLUSION

For the reasons discussed above, the district court's judgment is affirmed in part and vacated in part, and the case is remanded for a retrial solely on Millea's FMLA retaliation claim and for recalculation of attorneys' fees in accordance with this opinion and the results of that retrial.