11-4394-cv
Meisel v. Grunberg

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand thirteen.

Present:
> JOHN M. WALKER, JR.,
> ROBERT A. KATZMANN,
> GERARD E. LYNCH,
> > *Circuit Judges*.

---

BRUCE M. MEISEL,

> *Plaintiff-Counter-Defendant-Appellee*,

> v.                                                            No. 11-4394-cv

MICHAEL GRUNBERG, FANNY GRUNBERG,

> *Defendants-Counter-Claimants-Appellants*,

ARIEL GRUNBERG,

> *Defendant*.

---

For Plaintiff-Counter-
Defendant-Appellee:          MATTHEW H. GIGER (John J. Rosenberg, Brett T. Perala, *on the brief*), Rosenberg & Giger, P.C., New York, NY

For Defendants-Counter-
Claimants-Appellants:    AGNÈS DUNOGUÉ, Orrick, Herrington & Sutcliffe LLP (E.
Joshua Rosenkranz, Richard A. Bierschbach, Orrick,
Herrington & Sutcliffe LLP, Andrew N. Krinsky, Linda S.
Roth, Tarter Krinsky & Drogin LLP, *on the brief*), New York,
NY

Appeal from the United States District Court for the Southern District of New York (Jones, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendants-Counter-Claimants-Appellants Michael and Fanny Grunberg (collectively, "the Grunbergs") appeal from an amended judgment entered on February 24, 2012 by the United States District Court for the Southern District of New York (Jones, *J.*). That judgment enforced a jury verdict that awarded Plaintiff-Counter-Defendant-Appellee Bruce Meisel $3 million in compensatory damages and $1 million in punitive damages. The judgment also ordered the Grunbergs to pay $1,523,070 in prejudgment interest. On appeal, the Grunbergs argue (1) that the district court erred when instructing the jury, (2) that the evidence could not support a verdict in Meisel's favor, and (3) that the district court abused its discretion when calculating the amount of prejudgment interest. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

First, relying on *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, a recent decision by the New York Court of Appeals, the Grunbergs argue that the district court should have instructed the jury that Meisel could invalidate the release he executed only by offering proof of "a separate fraud from the subject of the release." 952 N.E.2d 995, 1000 (N.Y. 2011). But the Grunbergs waived this argument by failing to make any objection on this basis

2

before the district court. Under Federal Rule of Civil Procedure 51(c) and (d), in order to preserve an issue for appeal, a party must "object[] to an instruction . . . on the record, stating distinctly the matter objected to and the grounds for the objection." After "accept[ing]" a proposed charge that did not require the jury to find a *separate* fraud, J. App'x at 226, 234-36, the Grunbergs objected to further changes that Meisel proposed only on the ground that "the plaintiff is required to prove reliance with respect to both representations and omissions," *id.* at 326. This objection did not refer at all to the requirement that Meisel show a "separate fraud," much less state that ground "distinctly."

Nor do we exercise our discretion to notice "plain error." Fed. R. Civ. P. 51(d)(2). An appellate court may "exercise its discretion to notice a forfeited error . . . only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)); *see also* Fed. R. Civ. P. 51 advisory committee's note (stating that the "language adopted . . . in subdivision (d)(2) is borrowed from Criminal Rule 52," identifying the test for plain error under Criminal Rule 52, and noting that the Supreme Court originally required a showing of harm to "the fairness, integrity, or public reputation of judicial proceedings" in a civil case). Here, it was not obvious that Meisel had to prove the existence of a separate fraud, and thus nothing compromised "the fairness, integrity, or public reputation of judicial proceedings." *See* Fed. R. Civ. P. 51 advisory committee's note (identifying "the obviousness of the mistake" as the "factor most directly implied by a 'plain' error rule"). Specifically, because the parties' release did not include future claims,[1] the parties may not have

---

[1] The release at issue here barred claims "from the beginning of the world to the day of the date of these presents." In *Centro*, however, the parties released all claims "whether past, present or future." 952 N.E.2d at 998.

intended it to include claims for fraud. *See Centro*, 952 N.E.2d at 1000 (noting that "[t]he phrase 'all manner of actions,' *in conjunction with* the reference to 'future' and 'contingent' actions, indicate[d] an intent to release defendants from fraud claims, like this one, unknown at the time of contract" (emphasis added)); *see also Avalon LLC v. Coronet Props. Co.*, 762 N.Y.S.2d 48, 49 (App. Div. 2003) (noting that the two-year statute of limitations on a fraud claim begins to run on "the date of discovery" (citing N.Y. C.P.L.R. § 203(g))).

Neither can the Grunbergs rely on *Hegger v. Green*, where we held that an appellant's failure to object under Rule 51 did not preclude it from relying on an opinion that the New York Court of Appeals issued after the appellant's case had been tried. 646 F.2d 22, 27 (2d Cir. 1981). In *Hegger*, we emphasized that, because "New York authority was divided on" the relevant issue, the appellant could have "alert[ed] the trial judge to errors in the charge" only if "counsel had [had] the foresight to predict the [subsequent] change" in the law. *Id.* (internal quotation marks omitted). Here, however, in support of its holding that a plaintiff must identify a "separate fraud," the New York Court of Appeals cited this Court's opinion in *Bellefonte Re Insurance Co. v. Argonaut Insurance Co. See Centro*, 952 N.E.2d at 1000. In *Bellefonte*, we affirmed the dismissal of a plaintiff's claims on the ground that "[t]he only fraud" a plaintiff alleged was the fraud covered by the "covenants not to sue" in the parties' settlement agreement. 757 F.2d 523, 527-28 (2d Cir. 1985) (alteration in original). Thus, unlike in *Hegger*, at the time of trial, the Grunbergs could have alerted the district court to binding precedent—namely, *Bellefonte*—that supported their current argument. In these circumstances, alerting "the trial judge to errors in the charge" would not have required any particular "foresight," and thus we see no reason not to apply Rule 51. *Hegger*, 646 F.2d at 27.

4

Next, the Grunbergs argue that the evidence presented at trial did not support the jury's verdict, and thus that the district court erred by denying their motion for judgment as a matter of law. "We review the district court's denial of Appellants' . . . motion for judgment as a matter of law *de novo*." *Kinneary v. City of N.Y.*, 601 F.3d 151, 155 (2d Cir. 2010). In doing so, we apply "the same standard as the district court." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). "That standard generally imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). The movant's burden is "particularly heavy" where, as here, the jury has actually returned a verdict in favor of the non-moving party. *Id.* (internal quotation marks omitted). "In such circumstances, a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (internal quotation marks omitted).

Here, the evidence amply supported each of the jury's determinations. We turn first to the jury's finding that, while negotiating the purchase of Meisel's interest in two residential apartment buildings that Meisel jointly owned with Fanny Grunberg, Michael Grunberg knowingly misrepresented Fanny Grunberg's present intention to sell those buildings ("the properties"). The evidence at trial showed that the Grunbergs had received a sale proposal from a real-estate broker months before Meisel sold his interest; that the proposal incorporated information the broker could have obtained only from the Grunbergs' office; that the Grunbergs

5

agreed to list the properties with that broker less than three weeks after purchasing Meisel's interest; and that, on the same date that they agreed to list the properties, Fanny Grunberg authorized the broker to obtain information from the New York Division of Housing and Community Renewal. Given the evidence of a continuing relationship between the Grunbergs and the broker, a reasonable jury could have concluded, even by clear and convincing evidence, that Fanny Grunberg intended to sell the properties at all relevant times and that Michael Grunberg knew of this fact. As Michael Grunberg acknowledged in an email, only "the manager[] and majority owner[] of [the] property," *i.e.*, Fanny Grunberg, could authorize others "to entertain interest in or offer to sell the[] properties." Transcript of Proceedings and Exhibits ("Tr.") at 656.[2]

Similarly, a reasonable jury could have concluded that Meisel reasonably relied on Michael Grunberg's misrepresentation of Fanny Grunberg's intentions. Had Meisel known or suspected that Fanny Grunberg intended to sell the properties, he would have had no reason to sell his minority interest for less than its fair market value. Selling at a reduced rate made sense only if, as Michael wrote in a letter to his advisor, he believed his other option was "to roll the dice to see which partner outlasted whom." Tr. at 963.[3] While the Grunbergs argue that Meisel could not have *reasonably* relied on any misrepresentation unless he requested some contractual protection, the cases to which they refer impose such a requirement only where the relevant plaintiff had notice that it had received false or incomplete information. *See, e.g.*, *Lazard Freres*

---

[2]For substantially the same reasons, we hold that a reasonable jury could have concluded that the Grunbergs breached their fiduciary duties to Meisel.

[3]For substantially the same reasons, we hold that the evidence supported the conclusion that the Grunbergs' breaches of fiduciary duty caused Meisel to sell his interest and thus to suffer damages.

6

*& Co. v . Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) (plaintiff had "been put on notice of the existence of material facts which [had] not been documented" (quoting *Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (N.Y. App. Div. 1990))); *Centro*, 952 N.E.2d at 1002 ("[P]laintiffs knew that defendants had not supplied them with the financial information necessary . . . ."). Here, in contrast, although the Grunbergs point out that Meisel speculated that they could sell, they have not identified any evidence that would have put him "on notice" that Michael Grunberg had misrepresented Fanny Grunberg's present intention to sell.

Next, the Grunbergs contend that the district court erred when it instructed the jury that their breaches of fiduciary duty needed to constitute only "a substantial factor" in Meisel's decision to sell his interest in the properties. J. App'x at 171-74. "We review *de novo* a claim of an erroneous jury instruction." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 163 (2d Cir. 2011). "To justify a new trial, a jury instruction must be both erroneous and prejudicial." *Id.* "An erroneous jury instruction is prejudicial unless the court is convinced that the error did not influence the jury's verdict." *Id.* (internal quotation marks omitted).

We have previously explained that, "where damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused [the] injury." *LNC Invs., Inc. v. First Fidelity Bank, N.A.*, 173 F.3d 454, 465 (2d Cir. 1999). Although the district court did not use the words "proximate cause," we are convinced that "the error did not influence the jury's verdict." *Id.* at 462 (internal quotation marks omitted). As described above, the jury found that the Grunbergs' misrepresentations fraudulently induced Meisel to sell his interest. These same misrepresentations formed the substance of the Grunbergs' breaches of fiduciary duty. When the district court instructed the

7

jury on fraudulent inducement, it required the jury to find that "Meisel would not have entered

[into] the sale agreement and related release[] but for the fraud practiced upon him by" the

Grunbergs. J. App'x at 359. Moreover, as the district court noted, the jury awarded damages in

an amount equal to the difference between the price at which Meisel sold and the price that he

regarded as the fair market value of his interest.[4] Given these findings, the jury evidently

concluded that the Grunbergs' breaches of fiduciary duty caused Meisel to sell at a price below

what he would have otherwise demanded, namely, what he regarded as the fair market value of

his interest. This conclusion is indistinguishable from a finding of proximate causation. *See*

*Bernshtein v. City of N.Y.*, No. 11-0545-cv, 2012 WL 4040215, at *3 (2d Cir. Sept. 14, 2012)

(summary order) (upholding jury instructions that defined "proximate cause" as "a cause that

naturally and probably led to and might have been expected to produce plaintiff's injury, or that

a reasonable person would regard as the cause of the injury").

Finally, the Grunbergs argue that the district court miscalculated the amount of

prejudgment interest. "We review a district court's award of prejudgment interest for an abuse of

discretion." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Under

N.Y. C.P.L.R. § 5001(b), "[i]nterest shall be computed from the earliest ascertainable date the

cause of action existed, except that interest upon damages incurred thereafter shall be computed

from the date incurred." "[T]he ascertainable date assumes that whatever damages are sought are

shown to have been sustained at least by that time." *155 Henry Owners Corp. v. Lovlyn Realty

Co.*, 647 N.Y.S.2d 30, 31 (N.Y. App. Div. 1996) (internal quotation marks omitted).

---

[4]The jury's award of $3 million in damages seems to have been based on a 2005 letter Meisel wrote to the Grunbergs shortly before selling his share for $7.8 million. In that letter, Meisel noted that, according to a recent valuation, his share was at that time worth $10.8 million.

8

As noted above, the jury awarded Meisel the difference between the price at which he sold and the price he regarded as his interest's fair market value. The district court did not abuse its discretion when it concluded that Meisel "sustained" damages, and thereby obtained a cause of action, when the Grunbergs' breaches of fiduciary duty caused him to sell his interest at a lower price than he otherwise would have. While the Grunbergs argue that the district court's calculation contradicted Meisel's theory of damages at trial, the jury rejected that theory, declining to award damages in the amount Meisel requested. Thus, the district court based its calculation on the jury's apparent findings, and we affirm.

We have considered the defendants' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK