Dr. Gerald **FINKEL,** as Chairman of the Joint Industry Board of the Electrical Industry, Plaintiff,

v.

UNIVERSAL ELECTRIC CORP., Defendant.

No. 12–CV–2154 (MKB).

United States District Court, E.D. New York.

Aug. 27, 2013.

Parisis G. Filippatos, Flushing, NY, for Plaintiff.

## ORDER

MARGO K. BRODIE, District Judge.

The Report and Recommendation of Magistrate Judge Cheryl L. Pollak dated August 9, 2013, to which no objections have been filed, is adopted in its entirety. The Court grants Plaintiff's motion for a default judgment and directs the Clerk of the Court to enter judgment in the amount of $14,914.34, consisting of: (1) $4,378.63 in unpaid Required Contributions, (2) $7,035.29 in interest, (3) $870.23 in liquidated damages, and (4) $2,630.19 in attor-

ney's fees and costs. Plaintiff is also awarded any additional interest that accrues after the date of the Report and Recommendation until the entry of judgment, together with post-judgment interest. *See* 28 U.S.C. § 1961.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

CHERYL L. POLLAK, United States Magistrate Judge.

On May 2, 2012, plaintiff Dr. Gerald Finkel ("plaintiff"), in his capacity as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), commenced this action against defendant Universal Electric Corp. ("defendant" or "Universal Electric"), pursuant to Sections 404, 409, 502, and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1104, 1109, 1132, and 1145 ("ERISA"), and pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), alleging that defendant failed to make required contributions to various employee benefit funds as required by two collective bargaining agreements, which were in effect from May 10, 2007 through May 13, 2010 ("2007 CBA") and from May 12, 2010 through May 8, 2013 ("2010 CBA") (collectively, "the CBAs"). (Compl.[1] ¶¶ 1, 11, 37, 40, 43, 45).

Despite proper service on May 4, 2012, defendant failed to answer or otherwise respond to the Complaint. On August 31, 2012, plaintiff requested a Certificate of Default. On that same day, the Clerk of the Court entered a notation of default against defendant, and on September 28, 2012, plaintiff filed a Motion for Default Judgment. (Mot. for Default J.[2], Ex. C).

---

1. Citations to "Compl." refer to the Complaint, filed on May 2, 2012.

2. Citations to "Mot. for Default J." refer to the Motion for Default Judgment, filed by plaintiff on September 28, 2012.

On December 7, 2012, the Motion for Default Judgment was referred to the undersigned to conduct an inquest and to prepare a Report and Recommendation. For the reasons set forth below, the Court respectfully recommends that plaintiff's motion for default judgment be granted and that damages be awarded in the amount of $14,914.34.

## BACKGROUND

Plaintiff is the Chairman of the Joint Board, which is a fiduciary and administrator of various employee benefit plans within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A). (Compl. ¶¶ 4, 5). These benefit plans were established pursuant to the CBAs between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL–CIO (the "Union"), and various employer associations and independent or unaffiliated employers in the electrical, elevator, sign, television, burglar alarm, and related industries. (Id. 14). The Joint Board has its principal place of business at 158–11 Harry Van Arsdale Jr., Ave., Flushing, N.Y. 11365. (Id.)

Defendant Universal Electric is a New York corporation engaged in the electrical contracting business, with its principal facility located at 99 Lafayette Ave., North White Plains, N.Y. (Id. ¶ 10). According to the Complaint, Universal Electric is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a). (Id.) Universal Electric is a member of the Association of Electrical Contractors, Inc. ("AEC"), which bargains on its behalf. (Id. ¶ 11). Defendant agreed to be bound by the terms of the 2007 and 2010 CBAs between the New York Electrical Contractors Association, Inc., the AEC, and the Union. (Id. ¶¶ 10, 12–14).

Pursuant to the CBAs, Universal Electric is obligated to remit contributions to the Joint Board for the following employee benefit funds, each of which is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3): the Pension, Hospitalization and Benefit Plan ("PHB"); the Dental Benefit Fund ("DEN"); the Educational and Cultural Trust Fund ("E & C"); the Annuity Plan ("ANN"); the Vacation–Holiday Unemployment Plan ("VHUI"); the Health Reimbursement Account Plan ("HRAP"); and the National Employees Benefit Fund ("NEBF"). Together, these funds are called the "ERISA Funds." (Id. ¶ 6; Sessa Decl.[3] ¶ 6).

Along with contributions to the ERISA Funds, the Joint Board collects assessments on behalf of employees who authorize employers to deduct Union dues and loan repayments owed to the Union ("Union Amounts"). (Compl. ¶ 7). Under the CBAs, employers are also obligated to pay contributions to three non-ERISA plans: the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit and Wage Delinquency Fund ("BWDF"), and the COPE Fund (collectively, the "Non–ERISA Plans"). (Id.) The Union Amounts and the amounts owed to the Non–ERISA Plans are referred to as the "Non–ERISA Contributions." (Id.) Taken together, all contributions to the ERISA Funds and all Non–ERISA Contributions are referred to as "JIB Contributions." (Id.)

In addition to JIB Contributions, employers are required to remit contributions

---

**3.** Citations to "Sessa Decl." refer to the Declaration of Christina A. Sessa, dated September 27, 2012.

to the Deferred Salary Plan ("DSP"), which is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of Section 401(k) of the Internal Revenue Code. (*Id.* ¶ 6). Pursuant to the CBAs, employers must deduct a specified percentage of the weekly wage of each eligible employee and remit that amount, plus additional salary deferrals made by the employee, to the DSP. (*Id.*) The amount that is remitted is termed an "Employee Contribution." (*Id.*) Employers also must submit employer contributions on behalf of all employees, independent of any elections made by employees. (*Id.*) This amount is called "Employer Contributions." (*Id.*) The total amounts of the Employee Contributions and the Employer Contributions are called the "DSP Contributions;" the DSP Contributions are sent to a third party investment manager and records keeper, Mercer Trust Company ("Mercer"). (*Id.*)

In addition to the obligation to remit JIB Contributions, the CBAs require the Company to submit payroll reports ("Payroll Reports") to the Joint Board that indicate the name, gross wages, and hours worked for each employee of Universal Electric on whose behalf JIB Contributions are made. (*Id.* ¶ 15). Employers must also submit payroll reports setting forth the amounts being deducted from employees' wages ("DSP Reports") to Mercer. (*Id.* ¶¶ 6, 16).

For purposes of this Report and Recommendation, "Required Contributions" consist of DSP Contributions and JIB Contributions. (*Id.* ¶ 7).

**4.** Citations to "Pl.'s Mem." refer to the Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, filed on September 28, 2012.

## ALLEGATIONS

Following the referral to this Court, the parties were Ordered to submit documents in connection with the Motion for Default by January 11, 2013. Upon reviewing plaintiff's papers submitted in support of his Motion for Default Judgment, the Court determined that the periods of weeks for which plaintiff sought damages in the Motion for Default Judgment conflicted with the periods of weeks set forth in plaintiff's Complaint. Since no explanation of the conflicting requests had been included by plaintiff in his supporting papers, the Court issued an Order on February 22, 2013 directing plaintiff to provide certain clarifying information. Having received nothing from plaintiff, the Court issued a follow-up Order on June 7, 2013, directing plaintiff to supply the requested information. On July 8, 2013, plaintiff provided the Court with a letter containing the clarifying information.

After considering plaintiff's Complaint, together with the papers filed in support of the Motion for Default Judgment and the July 8, 2013 letter, it appears that plaintiff now seeks the following in this action.

### I. *Required Contributions*

#### A. *JIB Contributions*

In the Complaint, plaintiff alleges that defendant failed to pay JIB Contributions for the period of weeks ending March 14, 2012 through April 18, 2012. (*Id.* ¶ 22). However, the papers submitted in support of plaintiff's Motion for Default Judgment seek JIB Contributions for a different period of time: the period of weeks ending May 2, 2012 through May 23, 2012. (*See* Pl.'s Mem.[4] at 9).[5] Plaintiff alleges that

**5.** Although these amounts were not specified in the Complaint, plaintiff's Complaint seeks any "additional amounts [that] continue to become due and owing during the pendency of [the] action." (Compl. ¶ 32).

the amount owed for this later period of time is $3,570.38. (*See id.* at 10). Plaintiff fails to explain why he seeks damages for this later period, which was not included in the Complaint,[6] but plaintiff does explain that the JIB Contributions owed for the period of weeks ending March 14, 2012 through March 28, 2012 were paid after the filing of the Complaint. (*See id.* at 13). Plaintiff provides additional information in his July 8, 2013 letter, explaining that on May 7, 2012 and May 10, 2012, respectively, JIB Contributions were paid for the remaining weeks, ending March 29, 2012 through April 18, 2012. (See Pl.'s 7/8 Ltr.[7] at 1). As such, it appears that at this point, plaintiff seeks JIB Contributions only for the period of weeks between May 2, 2012 and May 23, 2012. (*See id.*)

### B. *DSP Contributions*

The Complaint alleges that defendant failed to remit DSP Contributions for the period of weeks ending January 18, 2012 through February 22, 2012, as well as for the period of weeks ending March 14, 2012 through April 18, 2012. (Compl. ¶ 23). However, here again, the papers submitted in support of plaintiff's Motion for Default Judgment seek DSP Contributions for different period of time than that listed in the Complaint; the papers filed in support of plaintiff's Motion for Default Judgment seek unpaid DSP Contributions for the weeks ending May 9, 2012 through May 23, 2012. (Pl.'s Mem. at 9). Plaintiff claims that the amount owed in DSP Contributions for this period of time is $808.25.

(*Id.*) Again, plaintiff has not provided an explanation as to why he seeks contributions for this later time period not included in the Complaint. (*See* n. 5 supra).

In his July 8, 2013 letter, plaintiff clarifies that DSP Contributions for the weeks ending January 18, 2012 through February 22, 2012 and March 14, 2012 through April 20, 2013 have already been paid, although plaintiff does not provide the precise date(s) upon which those DSP Contributions were remitted. (*See* Pl.'s 7/8 Ltr. at 1). Accordingly, it appears that plaintiff now seeks DSP Contributions only for the weeks ending May 9, 2012 through May 23, 2012, allegedly totaling $808.25 in amounts owed. (*See* Pl.'s Mem. at 10).

### II. *Audit Report*

On May 22, 2012, the Joint Board completed an audit of Universal Electric's payroll records (the "Audit Report") for the period of January 1, 2011 through December 31, 2011 ("the Audit Period"). (*See id.*). According to plaintiff, the Audit Report allegedly demonstrates that Universal Electric "failed to report all of the wages paid to workers who performed work covered under the 2010 CBA." (*Id.*) Pursuant to this Audit Report, plaintiff seeks an additional $10,147.03. (*Id.*) [8]

### III. *Interest on Required Contributions*

#### A. *JIB Contributions Paid Late, But Prior to the Filing of this Action*

Plaintiff's Complaint alleges that although defendant paid JIB Contributions

---

6. Since the Complaint was filed on May 2, 2012, it is presumed that these contributions were *not included in the Complaint because they had not yet become due. However, nowhere in plaintiff's papers does he explain this. Plaintiff does allege in his papers filed in support of his Motion for Default Judgment that defendant owes JIB Contributions for the period of weeks ending May 2, 2013 through May 23, 2013. (*See* Sessa Decl. ¶ 20).

7. Citations to "Pl.'s 7/8 Ltr." refer to the letter filed by plaintiff on July 8, 2013.

8. As discussed *supra* n. 5, the Complaint seeks any "additional amounts [that] continue to become due and owing during the pendency of [the] action." (Compl. ¶ 32).

for the period of weeks ending April 27, 2011 through November 2, 2011, those JIB Contributions were remitted late and therefore, interest is owed on those contributions. (Compl. ¶ 25). However, in his papers submitted in conjunction with his Motion for Default Judgment, plaintiff claims that defendant paid JIB Contributions late "for various dates during the period of weeks ending February 2, 2011 through February 22, 2012." (*See* Pl.'s Mem. at 12). According to plaintiff, the amount of interest owed for these late-paid weeks is $5,735.64. (*See id.*)

Given these conflicting requests, the Court requested and plaintiff provided clarification in his July 8, 2013 letter as to what he was now seeking. (*See* Pl.'s 7/8 Ltr. at 1). Plaintiff explained that he does not, in fact, seek interest on late-paid contributions for the period of weeks ending February 2, 2011 through April 20, 2011 because the interest owed for that time period was awarded in a separate action, No. 11 CV 1428. (*See id.*). Rather, plaintiff now appears to be seeking interest only on late-paid JIB Contributions for the period of weeks ending April 27, 2011 through February 22, 2012, in the total amount of $4,323.10. (*See* Compl. ¶ 25; Sessa Decl., Ex. U).[9]

### B. *Interest on JIB Contributions Paid Late, After the Filing of this Action*

In plaintiff's papers filed in support of its Motion for Default Judgment, plaintiff claims that Universal Electric paid JIB Contributions for the period of weeks ending March 14, 2012 through March 28, 2012, but paid them late, following the filing of this action. (Pl.'s Mem. at 12–13). Thus, plaintiff asserts that the Funds are owed $75.21 in late-paid JIB Contributions. (*Id.*)

### C. *Interest on DSP Contributions Paid Late, Prior to the Filing of This Action*

Similarly, plaintiff's Complaint asserts that Universal Electric remitted DSP Contributions after they were due and that as a result, plaintiff is owed interest on those late-paid DSP Contributions. (*See* Compl. ¶ 28).[10] Specifically, in the Complaint, plaintiff seeks interest on late-paid DSP Contributions for the period of weeks ending November 24, 2010 through April 6, 2011, as well as for the period of weeks ending April 27, 2011 through December 7, 2011. (*Id.*) However, in the papers submitted by plaintiff in support of his Motion for Default Judgment, plaintiff seeks interest on late-paid DSP Contributions for the period of weeks ending March 5, 2008 through December 7, 2011. (*See* Pl.'s Mem. at 12). According to these papers, the amount of interest owed on late-paid contributions for those periods is $18,382.59. (*Id.*)

Plaintiff's July 8, 2013 letter clarifies that the motion papers were in error and that plaintiff does not seek interest for the period of weeks ending March 5, 2008 through January 26, 2011 because they were actually awarded in an earlier case. (*See* Pl.'s 7/8 Ltr. at 1). Plaintiff explains that instead, he seeks interest on late-paid

---

9. The Court computed the interest on late-paid JIB Contributions being sought for the period of weeks ending April 27, 2011 through February 22, 2012 based upon the figures provided in Exhibit U of the Sessa Declaration; plaintiff failed to provide the precise amount being sought for this period of time in its papers.

10. The Complaint further alleges that when Universal Electric withholds employee contributions from a worker's wages, it is required to segregate the funds from its general assets. 29 C.F.R. § 2510.3–102(a). (*Id.* ¶ 29).

DSP Contributions only for the period of weeks ending February 2, 2011 through December 7, 2011, totaling $2,478.53. (*See id.*, Ex. 1). However, this updated period of time accounts for two weeks—the weeks ending April 13 and April 20, 2011—that were not alleged to have been paid late in the Complaint.[11] No explanation has been provided as to why plaintiff specifically excluded these weeks in his Complaint, but then later, in his July 8, 2013 letter, appears to request interest on the DSP Contributions remitted for those weeks.

### D. *Interest on Audit Deficiency*

Plaintiff claims that defendant owes interest on the audit deficiency in the amount of $227.68 as of September 30, 2012,[12] with interest accruing at a rate of $0.83 *per diem* from October 1, 2012 until the date that judgment is entered in this matter. (*See* Pl.'s Mem. at 12).

### E. *Interest on Unpaid Required Contributions*

Plaintiff claims that defendants must pay interest on still unpaid Required Contributions in the amount of $55.16 as of September 30, 2012, accumulating at an interest rate of $0.33 *per diem* from October 1, 2012 until the date that judgment is entered in this matter. (*See id.* at 11).

### IV. *Summary of Plaintiffs' Requests* [13]

| | Complaint | Motion for Default Judgment | July 8, 2013 Letter | Ultimate Request |
|---|---|---|---|---|
| JIB Contributions | Mar. 14, 2012–Apr. 18, 2012 (Compl. ¶ 22) | May 2, 2012–May 23, 2012 (Pl.'s Mem. at 9)<br><br>Mar. 14, 2012–Mar. 28, 2012 paid after Complaint was filed (Pl.'s Mem. at 13) | Not seeking: Mar. 29, 2012–Apr. 18, 2012 | May 2, 2012–May 23, 2012 |
| DSP Contributions | Jan. 18, 2012–Feb. 22, 2012 & Mar. 14, 2012–Apr. 18, 2012 (Compl. ¶ 23) | May 9, 2012–May 23, 2012 (Pl.'s Mem. at 9) | Not seeking: Jan. 18, 2012–Feb. 22, 2012 & Mar. 14, 2012–Apr. 18, 2012 | May 9, 2012–May 23, 2012 |
| Audit Remittance | Not mentioned | Jan. 1, 2011–Dec. 31, 2011 | Not mentioned | Jan. 1, 2011–Dec. 31, 2011 |
| Interest on Late–Paid JIB Contributions Paid Prior to Complaint | Apr. 27, 2011–Nov. 2, 2011 (Compl. ¶ 25) | Feb. 2, 2011–Feb. 22, 2012 (Pl.'s Mem. at 12) | Not seeking: Feb. 2, 2011–Apr. 20, 2011 | Apr. 27, 2011–Feb. 22, 2012 |
| Interest on Late–Paid JIB Contributions Paid After Complaint | Not mentioned | Mar. 14, 2012–Mar. 28, 2012 (Pl.'s Mem. at 13) | Not mentioned | Mar. 14, 2012–Mar. 28, 2012 |

11. As mentioned above, the Complaint alleges that interest on late-paid DSP Contributions is owed for the period of weeks ending November 24, 2010 through April 6, 2011, as well as for the period of weeks ending April 27, 2011 through December 7, 2011. (*See* Compl. ¶ 28).

12. Plaintiff submitted his Motion for Default Judgment on September 28, 2012, but computed the amounts due as of September 30, 2012. (*See* the Declaration of David R. Hock in Support of Plaintiff's Motion for Default Judgment, filed on September 28, 2012 ("Hock Decl." ¶ 16)).

13. This chart excludes the interest plaintiff seeks for unpaid Required Contributions and unpaid audit deficiencies, as these amounts allegedly accrue on a *per diem* basis.

| Interest on Late–Paid DSP Contributions | Nov. 24, 2010–Apr. 6, 2011 & Apr. 27, 2011–Dec. 7, 2011 (Compl. ¶ 28) | Mar. 5, 2008–Dec. 7, 2011 (Pl.'s Mem. at 12) | Not seeking: Mar. 5, 2008–Jan. 26, 2011 | Feb. 2, 2011–Dec. 7, 2011 |
|---|---|---|---|---|
| | | | Instead, seeking: Feb. 2, 2011–Dec. 7, 2011 | |

## V. *Total Amount Sought*

To summarize, in his Motion for Default Judgment, plaintiff seeks to recover: (1) $4,378.63 in unpaid Required Contributions; (2) $10,147.03 in deficiencies identified in the Audit Report; (3) $24,476.28 in interest, with certain interest accruing on a *per diem* basis; (4) $2,672.81 in liquidated damages; and (5) $3,362.56 in attorney's fees and costs. (See Mot. for Default J., Ex. C).

However, taking into account all available information provided by plaintiff in this matter, it appears that the amounts requested by plaintiff in his Motion for Default Judgment are incorrect. Instead, based on the July 8, 2013 letter, plaintiff actually appears to be seeking the following: (1) $4,378.63 in unpaid Required Contributions; (2) $10,147.03 in audit deficiencies identified in the Audit Report; (3) $7,159.68 in interest as of September 30, 2012 and with certain interest accruing on a *per diem* basis; (4) $2,672.81 in liquidated damages; and (5) $3,362.56 in attorney's fees and costs.

## DISCUSSION

### I. *Default Judgment*

#### A. *Legal Standard*

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir.1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.* Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. *See* Fed.R.Civ.P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara,* 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. *Id.* Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. *See Erwin DeMarino Trucking Co. v. Jackson,* 838 F.Supp. 160, 162 (S.D.N.Y.1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

■ The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant on notice, *see* Fed.R.Civ.P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *King v. STL Consulting LLC*, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment. *Hirsch v. Innovation Int'l, Inc.*, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. *Pacific M. Int'l Corp. v. Raman Int'l Gems. Ltd.*, 888 F.Supp.2d 385, 393–94 (S.D.N.Y. 2012).

■ The burden is on the plaintiff to establish its entitlement to recovery. *LaBarbera v. Federal Metal & Glass Corp.*, 666 F.Supp.2d 341, 348 (E.D.N.Y.2009). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992), *cert. de-*

*nied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). Indeed, for the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981).

B. *Entry of Default Judgment*
1. *Liability for Damages Alleged in Complaint*

■ In this case, plaintiff alleges in the Complaint that defendant violated ERISA Section 515, 29 U.S.C. § 1145, by failing to pay contributions to the ERISA Plans and by failing to submit weekly Payroll Reports. (Compl. ¶ 37).[14] Plaintiff also claims that defendant failed to timely remit Employee Contributions to the DSP and commingled the DSP assets with its general funds, which allegedly violated its fiduciary duties. (*Id.* ¶¶ 39, 42). Additionally, plaintiff alleges that defendant's failure to remit the Required Contributions breached the CBAs, giving rise to an action pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a). (*Id.* ¶ 45).

In the Complaint, plaintiff seeks to recover an amount equivalent to unpaid contributions, together with interest and liquidated damages, as well as attorney's fees and costs. (*Id.* ¶¶ B, C, D, E, F, G). Accordingly, based on the allegations in the Complaint, the Court finds that plaintiff has adequately alleged the elements necessary to state a claim under ERISA, as well as a breach of contract claim pursuant to the LMRA for failing to comply with the terms of the CBAs.

2. *Default Determination*

■ It is beyond dispute that defendant is in default. Despite proper service, defendant has not only failed to file an An-

---

14. Plaintiff alleges that these violations give rise to this action pursuant to ERISA Section

502(a)(3), 29 U.S.C. § 1132(a)(3). (Compl. ¶ 37).

swer or otherwise move with respect to the Complaint, but defendant has also failed to respond to plaintiff's Motion for a Default Judgment. *See Hirsch v. Innovation Int'l, Inc.,* 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear—it does not even oppose this motion"). The failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because the defendant, as a corporation, cannot proceed in federal court *pro se. See Shapiro, Bernstein & Co. v. Continental Record Co.,* 386 F.2d 426, 427 (2d Cir.1967) (*per curiam*) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); *see also Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Moreover, unlike those cases where courts have been hesitant to enter a default judgment because there were potentially millions of dollars involved, the amount of money involved in this case is not that significant. *See Hirsch v. Innovation Int'l Inc.,* 1992 WL 316143, at *2 (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran "well into the millions of dollars").

As such, given the numerous opportunities afforded to defendant, and its apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the CBAs (*see* Sessa Decl., Exs. A (2007 CBA) and B (2010 CBA)), the Court respectfully recommends that plaintiff's Motion for Default Judgment be granted.

## II. *Damages*

### A. *Legal Standard*

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. *La Barbera v. Federal Metal & Glass Corp.,* 666 F.Supp.2d at 348. When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d at 158; *Montcalm Publ'g Corp. v. Ryan,* 807 F.Supp. 975, 977 (S.D.N.Y.1992) (citing *United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir.1989)); *Deshmukh v. Cook,* 630 F.Supp. 956, 959–60 (S.D.N.Y.1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55–16 (2d ed. 1988). However, plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. *See Greyhound Exhibitgroup. Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d at 158. " 'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.' " *Levesque v. Kelly Commc'ns, Inc.,* No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The Court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed.R.Civ.P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but

need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), *aff'd* 873 F.2d 38 (2d Cir.1989).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of-

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505–07 (2d Cir.1995).

### B. *Damages Sought*

Pursuant to the Complaint, the Motion for Default Judgment, and the subsequent clarification provided by plaintiff in his July 8, 2013 letter, it appears that plaintiff seeks the following in this action: (1) $4,378.63 in unpaid Required Contributions—this includes unpaid JIB Contributions for the period of weeks ending May 2, 2012 through May 23, 2012 and unpaid DSP Contributions for the period of weeks ending May 9, 2012 through May 23, 2012; (2) $10,147.03 in audit deficiencies identified in the Audit Report—encompassing the time period of January 1, 2011 through December 31, 2011, pursuant to the 2010 CBA; (3) $7,159.68 in interest as of September 30, 2012, with certain interest accruing on a per diem basis; [15] (4) $2,672.81 in liquidated damages; and (5) $3,362.56 in attorney's fees and costs.

In deciding whether plaintiff may be awarded such damages, the Court must determine whether plaintiff has provided sufficient notice to defendant. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contracting Corp.*, No. 08 CV 1671, 2009 WL 928331, at *3 (E.D.N.Y. Apr. 2, 2009) (discussing the importance of providing sufficient notice to defendants in allowing recovery in an ERISA default judgment action) (citing cases). However, when plaintiff clearly seeks such damages in its complaint, sufficient notice has been provided. *See, e.g., id.*; *Finkel v. Triple A Grp., Inc.*, 708 F.Supp.2d 277, 282–83 (E.D.N.Y.2010).

In this case, the Complaint expressly requests that defendant be ordered to provide: "Required Contributions determined by the Court to be due and owing" (Compl. ¶ B); "interest on the amount of Required Contributions found to be due and owing" that has accrued "through the date that judgment is entered ..." (*id.*

---

**15.** Plaintiff appears to be seeking all of the following in interest: (1) interest on unpaid Required Contributions, as of September 30, 2012 and accruing on a *per diem* basis; (2) interest on unpaid amounts identified in the Audit Report, as of September 30, 2012 and accruing on a *per diem* basis; (3) interest on late-paid JIB Contributions for the period of weeks ending April 27, 2011 through February 22, 2012 and March 14, 2012 through March 28, 2012; and (4) interest for late-paid DSP Contributions for the period of weeks ending February 2, 2011 through December 7, 2011.

¶ C); "interest on any late-paid Required Contributions paid prior to the filing of the Complaint, and such further interest as may accrue on that amount ..." (*id.* ¶ D); "interest on any late-paid Required Contributions paid after the filing of the Complaint" and any additional interest that accrues through the date of judgment (*id.* ¶ E); and liquidated damages. (*Id.* ¶ F).

Under these circumstances, the Court finds that the Complaint provided defendant with sufficient notice that plaintiff would seek unpaid Required Contributions accruing after the action was filed, interest that accrued both before and subsequent to the filing of the Complaint for the various amounts due to plaintiff, and liquidated damages. *See Finkel v. Triple A Grp., Inc.,* 708 F.Supp.2d at 282–83 (holding defendants liable for damages in an ERISA action that accrued after the filing of the complaint, where the complaint sought amounts due for unpaid contributions "as of the date judgment is entered," but not holding defendants liable for damages due for interest and liquidated damages on late-paid contributions because

such damages were not mentioned in the complaint) (internal quotations omitted).

### C. *Calculation of Damages*

 In this case, where plaintiff has filed reasonably detailed materials—including a supplementary letter—pertaining to the damages incurred, and defendant has failed to make an appearance, or otherwise respond and present evidence on the issue of damages, the Court is able to make an informed recommendation regarding damages.

#### 1. *Required Contributions*

According to plaintiff, Universal Electric owes $3,570.38 in unpaid JIB Contributions for the weeks ending May 2, 2012 through May 23, 2012.[16] (*See* Sessa Decl. ¶ 20). Plaintiff also seeks $808.25 in DSP Contributions for the weeks ending May 9, 2012 through May 23, 2012. (*See* Sessa Decl. 122).[17] In sum, the following is being sought in Required Contributions, which notably all became due after the Complaint was filed:

| Plan | Contributions Due |
| --- | --- |
| PHBP | $1,613.40 |
| DEN | $163.04 |
| ANN | $1,540.00 |
| E & C | $51.14 |
| NEBF | $175.32 |
| EESISP | $27.48 |
| **Total JIB Contributions** | **$3,570.38** |
| DSP | $808.25 |
| **Total Required Contributions** | **$4378.63** |

(*See* Hock Decl. ¶ 10; Sessa Decl. ¶¶ 20–22).[18] Plaintiff calculated the amounts

---

**16.** *See* discussion *supra* at pp. 114–15.

**17.** *See* discussion *supra* at p. 115.

**18.** According to plaintiff, no amounts were owed for the following plans: (1) JT Board; (2) Dues; (3) Delinquency Fund; (4) Loan

Repayments; and (5) Cope Contributions. (*See* Hock' Decl. ¶ 10). Plaintiff also notes that although the CBAs require Universal Electric to submit Non–ERISA Contributions, no contributions were due to the Non–ERISA Funds for the relevant weeks, with the one exception of the EESISP. (*Id.* n. 2).

owed in JIB Contributions and DSP Contributions from the weekly invoices and the DSP summaries. (*See id.* (citing Sessa Decl., Exs. O, P); *see also id.*, Ex. A). Having reviewed the plaintiff's submissions, the Court respectfully recommends that plaintiff be awarded $4,378.63 owed by defendant in unpaid Required Contributions.

### 2. *Audit Deficiency*

As mentioned above, on or about May 22, 2012, the Joint Board completed an audit of defendant's payroll records (the "Audit Report") for the period of January 1, 2011 through December 31, 2011 (the "Audit Period"). (Sessa Decl. ¶ 23). According to the Audit Report, defendant failed to report wages for three employees performing work covered by the 2010 CBA. (*Id.* ¶ 24). As a result, plaintiff asserts that Universal Electric failed to pay Required Contributions for these employees in the amount of $10,147.03. (*Id.*; Hock Decl. ¶ 11). Plaintiff states that defendant has not yet remitted the amounts owed pursuant to the Audit Report. (*See* Hock Decl. ¶ 12; Sessa Decl. ¶ 26).

Having reviewed the Audit Report, which is attached to the Sessa Declaration as Exhibit Q (*see* Sessa Decl. ¶ 25), the Court respectfully recommends that plaintiff's request for the amounts identified in the Audit Report be denied at this time. Although plaintiff has provided a copy of the Audit Report, he fails to specify for which periods of time Required Contributions were allegedly still owed in 2011. Without this information, the Court cannot confirm the accuracy of plaintiff's allegation that the Funds are still owed the full amount identified in the Audit Report. Particularly since plaintiff's papers contain indications that at least some Required Contributions previously owed by defendant during this period may have already been paid,[19] the Court is reluctant to recommend that the full amount sought pursuant to the Audit Report be awarded.[20] Without any way of ensuring that the Required Contributions for 2011 already paid by defendant do not cover the same period of weeks for which Required Contributions are owed pursuant to the Audit Report, the Court respectfully recommends that plaintiff's request for the amount sought in the Audit Report be denied at this time.

### 3. *Interest*

Plaintiff claims that under ERISA and the CBAs, the Funds are entitled to an award of: (1) interest on unpaid JIB Contributions for the period of weeks ending May 2, 2012 through May 23, 2012; (2)

---

19. For example, plaintiff states in his July 8, 2013 letter that he does not seek interest on late-paid JIB Contributions for the period of weeks ending February 2, 2011 through April 20, 2011 because the interest—and therefore presumably the principal as well—has already been paid by defendant. (*See* Pl.'s 7/8 Ltr. at 1). Since this time period covers, in part, the same period covered by the audit, the Court cannot, without further documentation, determine if contributions for this period are included in the Audit Report.

20. As a separate issue, plaintiff appears to be seeking the same set of damages in more than one action. In plaintiff's papers filed in support of the Motion for Default Judgment,

plaintiff seeks interest for late-paid DSP Contributions for various dates during the period of weeks ending March 5, 2008 through December 7, 2011. (*See* Pl.'s Mem. at 12). However, in plaintiff's July 8, 2013 letter, plaintiff states that the interest for late-paid DSP Contributions for the period of weeks ending March 5, 2008 through January 26, 2011 were already awarded in a could separate case. (*See* Pl.'s 7/8 Ltr. at 1). Similarly, plaintiff states that he no longer seeks interest for late-paid JIB Contributions for the period of weeks ending February 2, 2011 through April 20, 2011 because, here again, this interest has been awarded in the separate action. (*Id.*)

interest on unpaid DSP Contributions for the period of weeks ending May 9, 2012 through May 23, 2012; (3) interest on the deficiency identified in the Audit Report; and (4) interest on Required Contributions paid late both prior to and after the filing of this action. (*See* Hock Decl. ¶¶ 16–20; Pl.'s 7/8 Ltr. at 1).

Pursuant to Section 1132(g)(2) of ERISA, the interest rate on unpaid contributions is calculated "using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, the Joint Board has adopted the rate established by Section 6621, except for the NEBF Plan, the only benefit plan that provides for a specific interest rate; the NEBF Plan has established a ten percent (10%) interest rate. (*See* Hock Decl. ¶ 13; Sessa Decl. ¶ 29, Exs. R, S). Accordingly, interest for the NEBF Plan is to be calculated at the rate of 10%; interest owed to the remaining benefit plans will be calcu-

lated using the rates prescribed by Section 6621 of Title 26.[21] (*See* Hock Decl. ¶ 13).

According to plaintiff, interest started accruing as of the "last day the contributions have become due and owing, i.e., the last day [defendant's] employees could have performed covered work which triggered the contribution obligation, or the payroll week ending date." (*Id.* ¶ 14).

### a) *Interest Owed on Unpaid Contributions*

In his papers, plaintiff provides two formulas for calculating interest: one for the NEBF benefit plan, which provides for a specific interest rate often percent (10%), compounding monthly throughout the period of delinquency (*id.* ¶ 15, n. 5), and another formula for the remaining Plans. (*Id.* ¶ 15). According to plaintiff, the interest owed as of September 30, 2012 on unpaid Required Contributions is as follows:

| Plan | Interest Owed | Per Diem Rate |
|---|---|---|
| PHBP | $18.63 | $0.12 |
| DEN | $1.89 | $0.00 |
| ANN | $17.90 | $0.11 |
| E & C | $0.59 | $0.00 |
| NEBF | $6.72 | $0.04 |
| EESISP | $0.32 | $0.00 |
| **Total JIB Interest** | $46.05 | $0.27 |
| DSP | $9.11 | $0.06 |
| **Total Interest** | $55.16 | $0.33 |

(*Id.* ¶ 16).

After reviewing the materials submitted by plaintiff, the Court respectfully recommends that plaintiff be awarded interest in the amount of $158.45 owed on unpaid Required Contributions. This amount was determined by adding the amount owed as of September 30, 2012, which was $55.16,

to the interest that accrued between October 1, 2012 and August 9, 2013, the date of this Report and Recommendation.

### b) *Interest Owed on the Audited Deficiency*

Based on the deficiencies identified in the Audit Report, plaintiff also seeks interest that has accrued on the unpaid contri-

---

**21.** Plaintiff determined the applicable interest rate by referring to the following website:

http://www.dol.gov/ebsa/calculator/interest ratetables.html. (*See* Hock Decl. ¶ 13, n. 3).

butions owed for the Audit Period. (*Id.* ¶ 17). Calculating interest owed from the day after the final day of the audit period through September 30, 2012, plaintiff seeks $227.68 in interest. (*Id.*, Ex. C). Plaintiff also requests interest accruing between October 1, 2012 and the date of this Report, at the rate of $0.83 per day. (*Id.*)

For the reasons discussed earlier with respect to the amounts allegedly identified by the Audit Report as due, the Court respectfully recommends that plaintiff's request for interest on the deficiency identified in the Audit Report be denied because plaintiff has failed to provide sufficient supporting documentation to allow the Court to determine the accuracy of the amounts requested.

### c) *Interest Owed on the Late–Paid Contributions*

It appears from plaintiff's submissions that plaintiff also seeks interest on late-paid JIB Contributions for the period of weeks ending April 27, 2011 through February 22, 2012, as well as for the period of weeks ending March 14, 2012 through March 28, 2012. (*See* Pl.'s Mem. at 12–13; Pl.'s 7/8 Ltr. at 1). After computing the accumulated interest using the figures provided in Exhibit U of the Sessa Declaration for the period of weeks ending April 27, 2011 through February 22, 2012, it appears that the amount sought by plaintiff for the interest that accrued on late-paid JIB Contributions for those dates is $4,323.10. (*See* Sessa Decl., Ex U). Additionally, plaintiff claims that the Funds are owed $75.21 for the interest that accrued on the late-paid JIB Contributions from March 14, 2012 through March 2012. (*See* Hock Decl. ¶ 18).

Plaintiff also requests interest on late-paid DSP Contributions for the period of weeks ending February 2, 2011 through December 7, 2011, in the sum of $2,478.53. (*See* Pl.'s 7/8 Ltr. at 1). However, as discussed *supra* at page 116, there are two weeks of DSP Contributions—the weeks end April 13 and April 20, 2011, that were not alleged in the Complaint to have been paid late.[22] Nonetheless, while the Court ordinarily would recommend that plaintiff be denied the interest for those weeks because of this, it appears based on a careful examination of the spreadsheet submitted by plaintiff that he is not, in fact, seeking interest on late-paid DSP Contributions for these weeks. (*See id.*, Ex. 1). As such, the Court respectfully recommends that plaintiff be awarded the full amount requested, pursuant to the spreadsheet he has provided, totaling $2,478.53. (*See id.*).

Accordingly, having reviewed the calculations submitted by plaintiff, the Court respectfully recommends that plaintiff be awarded the full amount of interest sought for late-paid Required Contributions, totaling $6,876.84 in interest.

### d) *Summary of Interest Owed*

The Court respectfully recommends that plaintiff be awarded a total amount of $7,035.29, which is the total interest on unpaid and late-paid Required Contributions that has accrued up until the date of this Report and Recommendation, August 9, 2013—exclusive of interest on the audit amounts. Additionally, the Court recommends that plaintiff be awarded interest that will continue to accrue from the date of this Report and Recommendation until the entry of judgment, together with post-

---

**22.** As mentioned, the Complaint alleges that interest on late-paid DSP Contributions is owed for the period of weeks ending November 24, 2010 through April 6, 2011, as well as for the period of weeks ending April 27, 2011 through December 7, 2011. (*See* Compl. ¶ 28).

judgment interest pursuant to 28 U.S.C. § 1961.

#### 4. *Liquidated Damages*

Plaintiff requests liquidated damages for unpaid and underpaid contributions that were alleged in the Complaint, as well as liquidated damages for unpaid and late-paid contributions that became due after the Complaint was filed. (*See* Pl.'s Mem. at 13).

Plaintiff is entitled to an amount equal to either liquidated damages for unpaid, underpaid, and late-paid ERISA Plan Contributions pursuant to Section 502(g)(2) of ERISA (see Hock Decl. ¶¶ 22–23), or interest on the unpaid contributions (not to exceed more than 20% of the amount owed in unpaid contributions). *See* 29 U.S.C. § 1132(g)(2)(c). In this case, plaintiff seeks liquidated damages based on 20% of the unpaid and audited ERISA Plan Contributions, in the amount of $2,672.81. (*See* Hock Decl. ¶ 23).

According to plaintiff, liquidated damages on the unpaid and audited ERISA Plan Contributions are as follows for each of the ERISA plans:

| Plan | Liquidated Damages |
|------|--------------------|
| PHBP | $1,366.43 |
| DEN | $138.08 |
| ANN | $308.00 |
| E & C | $20.93 |
| NEBF | $148.47 |
| DSP | $690.90 |
| **Total** | **$2,672.81** |

(*Id.* ¶ 24). According to plaintiff, 20% of the Required ERISA Contributions is $870.23,[23] and 20% of the Required Contributions owed pursuant to the Audit Report, excluding Non–ERISA Contributions, is $1,802.58. (*See id.* ¶ 25). Since the undersigned respectfully recommends

that the Court deny the sum requested pursuant to the Audit Report, the Court recommends that plaintiff be awarded only the $870.23 in liquidated damages based on unpaid contributions owed under Section 1132(g)(2)(C) of ERISA, and that plaintiff's request for the additional $1,802.58 sought pursuant to the Audit Report be denied.

#### 5. *Attorney's Fees and Costs*

Plaintiff also requests reasonable attorney's fees and costs in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D), which provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. (*See* Hock Decl. ¶ 26).

##### a) *Reasonable Attorney's Fees*

 "The district court retains discretion to determine ... what constitutes a reasonable fee." *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 166 (2d Cir.2011) (citing *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 758 (2d Cir.1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." *Dunn v. Advanced Credit Recovery, Inc.,* No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. March 1, 2012) (citing *Perdue v. Kenny A.,* 559 U.S. 542, 130 S.Ct. 1662, 1672–73, 176 L.Ed.2d 494 (2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 188–90 (2d Cir.2008)); *see also Millea v. Metro–North R.R. Co.,* 658 F.3d at 166–67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point").

 To determine the lodestar amount, a court must determine "the num-

---

**23.** According to the Court's computation, 20% of the unpaid ERISA Contributions actually totals $875.73. However, the Court recommends that plaintiff be awarded $870.23 because that is all that plaintiff seeks in this action. (*See* Hock Decl. ¶ 24).

ber of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." *Moore v. Diversified Collection Servs., Inc.*, No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), *report & recommendation adopted by* 2013 WL 1622713 (April 15, 2013): *see also Adusumelli v. Steiner*, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees—multiplying the number of hours reasonable expended by a reasonable hourly rate") (citing *Millea v. Metro-North R.R., Co.*, 658 F.3d at 166); *Dunn v. Advanced Credit Recovery, Inc.*, 2012 WL 676350, at *5.

▆▆▆ Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d at 167 (quoting *Perdue v. Kenny A.*, 130 S.Ct. at 1673). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* (quoting *Perdue v. Kenny A.*, 130 S.Ct. at 1673); *see also Adusumelli v. Steiner*, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." *Id.* As the court explained in *Dunn v. Advanced*

*Credit Recovery, Inc.*, a court should "first use[ ] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[ ] the resulting figure using the [*Johnson v. Georgia Highway Express, Inc.*] factors to reflect consideration of any special circumstances."[24] 2012 WL 676350, at *5, n. 6.

▆▆▆ "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. *See Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d Cir.1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir.1994), *cert. denied*, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994)). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

▆▆▆ Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally

---

**24.** The *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

use the hourly rates employed in the district in which the reviewing court sits.'" *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir.2009) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

In this case, plaintiff was represented by Cohen, Weiss and Simon LLP (the "Firm"), which is located at 330 West 42nd Street, New York, N.Y. 10036. In accordance with *New York State Association for Retarded Children. Inc. v. Carey*, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed. 711 F.2d 1136, 1148 (2d Cir.1983). (*See* Hock Decl., Ex. D).

Plaintiff seeks attorney's fees in the amount of $2,929.50, representing services performed during the period from April 2, 2012 through September 28, 2012 by David R. Hock, Esq. and paralegals, Maureen A. Slack, and Benjamin D. Berger, in connection with plaintiff's efforts to obtain this judgment. (*See id.* ¶¶ 27, 33, Ex. D). Specifically, plaintiff seeks the following fees: (1) $1,480.50 for the 5.4 hours of work done by Mr. Hock, charging a rate of $260 per hour prior to July 1, 2012 and $275 per hour after that date; (2) $396.00 for the 4.4 hours of work completed by Ms. Slack charged at a rate of $90 per hour; and (3) $1,053.00 for Mr. Berger's 11.7 hours of work, billed at $90 per hour. (*See* Hock Decl. ¶¶ 28, 29, 33, Ex. D). According to the Declaration of Mr. Hock, he graduated from Washington College of Law at American University in 1999. (*See*

*id.* ¶ 32). He has been practicing in the employee benefits area since 2000 and effective July 1, 2012, he became a partner of the Firm. (*See id.*).

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an ERISA default, the Court finds that the rates of $260/$275 per hour for the legal work performed by Mr. Hock are within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. Although perhaps slightly higher than what is customarily requested in this District, *see, e.g., Finkel v. Triple A Grp., Inc.*, 708 F.Supp.2d 277, 290 (E.D.N.Y.2010) (determining that hourly rates for associates ranging from $200 to $225 are reasonable in connection with an ERISA inquest); *Finkel v. Jones Lang LaSalle Americas, Inc.*, No. 08 CV 2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding that hourly rates of $250 for partners, $235 for senior associates, and $225 for junior associates); *Finkel v. Rico Electric, Inc.*, No. 05 CV 2145, 2009 WL 3367057, at *7 (E.D.N.Y. Oct. 16, 2009) (awarding attorneys with five years of employee benefits experience the rate of $225 per hour in an ERISA inquest), the Court finds the requested rates to be reasonable in light of the fact that Mr. Hock became a partner during the period of time the work was performed.[25] *See, e.g., Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.*, No. 07 CV 4211, 2008 WL 4693533, at *10 (E.D.N.Y. Oct. 23, 2008) (allowing an associate to charge $235 per hour one year and $270 per hour the next in an ERISA default matter); *Private Sanitation Union Local 813, Int'l Brotherhood of Teamsters v. Gaeta–Serra Assocs.*, No. 02 CV 5526, 2005 WL

---

**25.** Additionally, the Court deems Mr. Hock's fee reasonable particularly given the minimal number of hours he billed. (*See* discussion *infra* at pp. 715–16).

2436194, at *3 (E.D.N.Y. Aug. 12, 2005) (approving a rate of $275 per hour for a senior associate who worked on an ERISA matter), *report & recommendation adopted by* 2005 WL 2429311 (Sept. 30, 2005). Accordingly, the Court respectfully recommends that the requested rates of $260 prior to July 1, 2012 and $275 per hour thereafter for Mr. Hock's time be approved.

With regard to the rate charged for the paralegals' work, the Court respectfully recommends that the requested rate of $90 per hour be approved as reasonable and appropriate. *See, e.g., Finkel v. Frank Torrone & Sons, Inc.,* No. 12 CV 924, 2012 WL 1393021, at *1 n. 1 (E.D.N.Y. Apr. 23, 2012) (recognizing that $90 per hour is a reasonable rate for a paralegal on an ERISA matter); *see also Ferrara v. PI Trucking Corp.,* No. 11 CV 661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011). *But see Finkel v. Detore Elec. Const. Co., Inc.,* No. 11 CV 814, 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012) (reducing a paralegal's hourly rate in an ERISA action from $90 to $80).

■ In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999) (citing *Hensley v. Eckerhart,* 461 U.S. at 433–35, 440, 103 S.Ct. 1933); *see also Rotella v. Board of Educ.,* No. 01 CV 434, 2002 WL 59106, at *3–4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); *Quinn v. Nassau County Police Dep't,* 75 F.Supp.2d 74, 78 (E.D.N.Y.1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); *Perdue v. City Univ. of N.Y.,* 13 F.Supp.2d 326, 346 (E.D.N.Y.1998) (imposing a 20% reduction for redundancy); *American Lung Ass'n v. Reilly,* 144 F.R.D. 622, 627 (E.D.N.Y.1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, *see, e.g., In re Olson,* 884 F.2d 1415, 1428–29 (D.C.Cir.1989) (reducing fees based on lack of specificity in description of work performed); *DeVito v. Hempstead China Shop, Inc.,* 831 F.Supp. 1037, 1045 (E.D.N.Y.1993) (reducing fee request by 40% for, *inter alia,* insufficient descriptions of work performed), *rev'd & remanded on other grounds,* 38 F.3d 651 (2d Cir. 1994); *Cabrera v. Fischler,* 814 F.Supp. 269, 290 (E.D.N.Y.1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), *rev'd in part & remanded on other grounds,* 24 F.3d 372 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); *Nu–Life Constr. Corp. v. Board of Educ.,* 795 F.Supp. 602, 607–08 (E.D.N.Y.1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); *Meriwether v. Coughlin,* 727 F.Supp. 823, 827 (S.D.N.Y.1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

■ Courts in this district also reduce fees where attorneys appear to have submitted careless or inaccurate work on behalf of their clients. For example, in *Gesualdi v. Stallone Testing Laboratories, Inc.,* the court reduced the requested attorney's fees for plaintiffs' counsel in a default by 50% "due to errors and poor drafting in plaintiffs' filings, including mistakes as to the interest rate used, the number of days of delinquent payment, and plaintiffs' failure" to abide by both the Federal Rules of Civil Procedure and the Eastern District of New York Local Rules.

No. 10 CV 646, 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011). The court explained: "[C]alculation errors and poor drafting merit fee reductions by casting doubt on the accuracy of a party's submissions to the court and forcing the court to expend resources unnecessarily as a result." *Id.* (citing *Trustees of the United Teamster Fund v. Mufflers, Inc.*, No. 07 CV 1425, 2008 WL 2114955, at *6 (E.D.N.Y. May 19, 2008)).

▮▮▮ The billing statements submitted by the Firm begin on May 29, 2012 and end on September 27, 2012. (*See* Hock Decl., Ex. D). The Firm's work on this case included drafting the Complaint, arranging for service of process, drafting plaintiff's Motion for Default Judgment, calculating the amounts owed, and compiling the materials annexed thereto. (*See* Hock Decl. ¶ 30). While plaintiff's counsel does not request a particularly substantial amount in fees, the Court nonetheless respectfully recommends that counsel's fees be decreased by 25% for the imprecise, confusing, and sometimes inaccurate papers submitted by plaintiff in this action. The Court does not recommend that plaintiff's counsel be awarded the full amount requested in fees given that plaintiff's Complaint and its papers filed in support of its Motion for Default Judgment contradicted each other in terms of the time periods covered, requested an award for periods of time covered by another action, and failed to provide sufficient supporting documentation. For example, despite the obvious conflicting dates for unpaid Required Contributions, no explanation was provided by plaintiff until the undersigned requested it. (*See* Pl.'s 7/8 Ltr. at 1). Moreover, when the Court received that clarifying information, it became evident

not only that plaintiff appears to have sought the same set of damages in multiple actions, but additionally, that in this case, plaintiff had "erroneously requested" over $15,000 more in late-paid DSP Contributions than what plaintiff was actually allegedly owed. Given plaintiff's counsel's carelessness, plaintiff would have been unjustly enriched had the Court not identified the inconsistencies and Ordered plaintiff to provide clarifying information.

As such, having carefully examined the billing records in this matter and having considered the nature of plaintiff's various submissions to the Court, the Court respectfully recommends that plaintiff be awarded $2,197.13, which represents a 25% reduction of the $2,929.50 in attorney's fees sought by plaintiff in this matter.

b) *Reasonable Costs*

▮▮▮ Plaintiff also requests $433.06 in costs for filing fees ($350.00), service of process fees ($62.00), and photocopies, facsimiles, and telephone tolls ($21.06 in total).[26] (*See* Hock Decl. ¶ 35, Exs. D, E). Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $433.06 in costs. *See Finkel v. Triple A Grp., Inc.*, 708 F.Supp.2d at 290–91 (awarding $818.53 in costs for filing fees, service of process, legal research, and postage).

In sum, the Court recommends that plaintiff be awarded $2,630.19 in attorney's fees and costs.

CONCLUSION

▮▮▮ The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages

**26.** The specific costs requested are as follows: $10.00 for in-house photocopies, $11.00 for in-house fax transmissions, and $0.06 in- house telephone tolls. (*See* Hock Decl., Ex. D).

from defendant: (1) $4,378.63 in unpaid Required Contributions; (2) $7,035.29 in interest; (3) $870.23 in liquidated damages; and (4) $2,630.19 in attorney's fees and costs. In total, the Court respectfully recommends that plaintiff be awarded $14,914.34, which is the amount owed as of August 9, 2013. Additionally, plaintiff is awarded any additional interest that accrues after the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York, August 9, 2013.